**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CAPITAL TITLE OF TEXAS, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 26-1235** |
| | § | |
| **CITIBANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT CITIBANK, N.A.'S MOTION TO DISMISS**

Defendant Citibank, N.A. ("**Citibank**") moves to dismiss Plaintiff Capital Title of Texas, LLC's ("**Plaintiff**" or "**Capital Title**") Complaint[1] pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

**SUMMARY OF ARGUMENT**

This case should be dismissed. First, there is no personal jurisdiction. Citibank is incorporated and headquartered in South Dakota. It directed no activities toward Texas. The only connection to Texas is a wire transfer that *Plaintiff itself initiated*, which the Fifth Circuit has squarely held cannot confer jurisdiction over the receiving bank. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433–34 (5th Cir. 2014). Second, Plaintiff's common-law claims are preempted by Article 4A of the UCC, which "explicitly governs the post-transfer recovery process, by providing a careful system for orchestrating the return of funds after a transfer has already gone awry." *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 370 (S.D. Tex. 2025). And even

[1] The operative complaint is Plaintiff's Amended Third-Party Petition filed in state court (hereinafter "**Complaint**"). *See* ECF No. 1, Exhibit A-6.

under Article 4A, Plaintiff has no direct right of recovery against a beneficiary's bank, as that right runs only through the originator's (Plaintiff's) own bank. The Complaint should be dismissed.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background

Citibank and Capital Title are the only parties in this removed action. The relevant facts, taken from Capital Title's Complaint, are as follows:

Citibank's sole connection to this dispute is that it received a wire transfer it did not solicit. Capital Title, a title company, initiated a $700,000 funds transfer to pay off liens held by a private lender, Loan Ranger Investments REIT, LLC ("**Loan Ranger**"), in connection with the closing of a residential real-estate sale in March 2024. ECF No. 1, Ex. A-6 ¶¶ 8–11.[2] A fraudster "intercepted the transaction" and provided fraudulent wiring instructions to Capital Title. *Id.* ¶ 12. Thereafter, Capital Title wired approximately $700,000 to the fraudster's Citibank account in California. *Id.* ¶¶ 13–14; Ex. A. The funds were never disbursed to the fraudster and remained frozen at Citibank. *Id.* ¶ 14. In March 2024, Capital Title notified Citibank that the funds had been misdirected and demanded their return. *Id.* ¶ 15. Citibank returned the full $700,000 principal in August 2025. *Id.* ¶¶ 16–17, 21.

Capital Title seeks only the $159,876.52 in interest and fees that accrued on the separate debt Capital Title owed to Loan Ranger (a third-party obligation to which Citibank was not a party and had no role in creating) during the period Citibank held the misdirected funds. *Id.* ¶¶ 22–26. The Complaint does not allege any contractual relationship between Citibank and Capital Title,

[2] Citibank takes the allegations set forth in Plaintiff's Complaint as true solely for purposes of the instant motion to dismiss.

does not identify any specific provision of Article 4A that Citibank allegedly violated, and does not allege the existence of any express written agreement authorizing consequential damages.

**B. Procedural Background**

The underlying litigation began on April 18, 2024, when Loan Ranger sued Capital Title in Texas state court. Capital Title initially filed a cross-claim against Citibank on May 20, 2024, and obtained a default judgment which was set aside because Capital Title failed to serve Citibank. On January 27, 2026, Capital Title filed a third-party petition against Citibank. Counsel for Citibank executed a waiver of service on February 19, 2026. *See* ECF No. 1, Ex. A-5.

On February 27, 2026, Capital Title filed an amended third-party petition (the live pleading and "**Complaint**" for purposes of this motion), asserting (1) violation of UCC Article 4A; (2) negligence; (3) conversion (pled in the alternative); (4) bailment (pled in the alternative); (5) money had and received (pled in the alternative); (6) unjust enrichment (pled in the alternative); and (7) declaratory judgment. *See generally* ECF No. 1, Ex. A-6.

After severance created a standalone action between Capital Title and Citibank, Citibank timely removed to this Court on May 11, 2026. *See* ECF No. 1.

Before the state court ruled on the motion to sever, Citibank filed a verified special appearance, and subject thereto, original answer and affirmative defenses, asserting that the state court lacked personal jurisdiction over it because there was no general or specific jurisdiction. *See* ECF No. 1, Ex. A-8. Plaintiff filed objections to the Special Appearance, which the state court did not address prior to removal.

## ARGUMENT & AUTHORITIES

### I. Dismissal is proper under Rule 12(b)(2) because Plaintiff does not allege facts sufficient to support the exercise of either general or specific jurisdiction.[3]

"When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 460 (5th Cir. 1996); *see also Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) (noting the party wishing to invoke the court's jurisdiction

[3] In the state-court action, Plaintiff argued that Citibank waived that challenge by agreeing to a motion to continue, executing a waiver of service, and agreeing to sever. Not so. Under Texas law, a party enters a general appearance (and thereby waives a jurisdictional objection) only if it invokes the court's judgment on a non-jurisdictional question, recognizes that an action is properly pending, or seeks "affirmative relief" inconsistent with a jurisdictional challenge. *Exito Elecs. Co., Ltd. v. Trejo*, 142 S.W.3d 302, 304–05 (Tex. 2004). None of Plaintiff's cited conduct meets that standard. Agreed continuances do not constitute a general appearance. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 323 (Tex. 1998); *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 846 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Waiving service under Rule 119 is a ministerial acknowledgment of notice, not an invocation of the court's authority. *See* TEX. R. CIV. P. 119. And an agreed motion to sever, like an agreed order on a plea in abatement, is a procedural, ancillary filing that neither invokes the court's jurisdiction nor seeks relief inconsistent with Citibank's jurisdictional objection. *See Exchequer Fin. Grp., Inc. v. Stratum Dev., Inc.*, 239 S.W.3d 899, 905 (Tex. App.—Dallas 2007, no pet.). Because none of these actions constitutes a general appearance, Citibank did not waive its right to challenge personal jurisdiction in this Court.

This motion is also timely. As to Rule 12(b)(2), a personal-jurisdiction defense is preserved under Rule 12(h)(1) so long as it is raised in a responsive pleading, and a defendant may thereafter seek adjudication of the defense by motion at any time before trial. *Dell Mktg., L.P. v. Incompass IT, Inc.*, 771 F. Supp. 2d 648, 652–54 (W.D. Tex. 2011) (Sparks, J.) ("[T]here is no principled reason to distinguish between a motion to dismiss based on lack of personal jurisdiction filed one day before the answer, concurrent with the answer, or one day after the answer, provided the issue is raised in the 'first significant defensive move.'"); *see also Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 379–80 (5th Cir. 2004) (no waiver despite seven-month gap between answer and motion where defendant had not otherwise engaged in litigation). Citibank raised personal jurisdiction in its special appearance and answer, and this motion is its first significant post-removal filing. As to Rule 12(b)(6), the defense of failure to state a claim cannot be waived before trial and may be raised at any time "in any pleading allowed or ordered under Rule 7(a), or by a motion under Rule 12(c), or at trial." FED. R. CIV. P. 12(h)(2).

must make a *prima facie* showing). There are two paths to jurisdiction: general and specific. Plaintiff's Complaint fails to allege facts to support either.

**A. There is no general jurisdiction because Citibank is not "at home" in Texas.**

General jurisdiction for a corporation is decided under *Daimler AG v. Bauman*, 571 U.S. 117 (2014). The question is "whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 138–39. For a corporation, "'the place of incorporation and principal place of business' are where it is 'at home' and are thus paradigm bases for jurisdiction." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler AG*, 571 U.S. at 136–37). The Fifth Circuit has held it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Id.* (citations omitted). A plaintiff attempting to do so must present an "exceptional case." *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts., LLC*, 466 F. Supp. 3d 692, 699 (S.D. Tex. 2020) (collecting cases).

There is no general jurisdiction because (1) Plaintiff does not allege that Texas is Citibank's principal place of business or state of incorporation, and (2) Plaintiff does not otherwise make the "exceptional case" that the exercise of general jurisdiction is warranted outside either of these forums. Plaintiff's singular jurisdictional allegation is that Citibank "provides banking services and is authorized to conduct business in the State of Texas," ECF No. 1, Ex. A-6 ¶ 3, which comes nowhere close to alleging that Citibank is "at home" in Texas. *See Monkton*, 768 F.3d at 432; *see also Garcia Hamilton*, 466 F. Supp. 3d at 700 (observing plaintiff bears the burden of making a prima facie showing of personal jurisdiction such that the court can conduct a qualitative analysis of the defendant's presence) (citing *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017)); *Zidell v. E.W.*

*Bank*, No. 3:24-CV-2340-D, 2025 WL 919385, at *3 (N.D. Tex. Mar. 26, 2025) (finding that Citibank lacked sufficient contacts in Texas to be rendered "essentially at home" or qualify as an "exceptional case" sufficient to confer general jurisdiction). Accordingly, there is no general jurisdiction over Citibank.

**B. There is no specific jurisdiction because Citibank lacks minimum contacts with Texas, and Capital Title—not Citibank—initiated the conduct at issue.**

"Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation.'" *Monkton*, 768 F.3d at 432–33 (quoting *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014)). The Fifth Circuit applies a three-step inquiry: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.*

There is no specific jurisdiction because Plaintiff does not allege that Citibank purposefully directed any activities toward Texas. Plaintiff's sole jurisdictional allegation is that Citibank "provides banking services" and "is authorized to conduct business" in Texas. ECF No. 1, Ex. A-6 ¶ 3. There is no suggestion that Citibank purposefully availed itself of the privileges of conducting activities in Texas (nor, necessarily, that Plaintiff's causes of action arose from any such activities). Because Plaintiff does not allege Citibank undertook any specific activity directed at Texas, Plaintiff fails to show specific jurisdiction exists. *See Monkton*, 768 F.3d at 433.

To be sure, Plaintiff's allegations demonstrate only that *Plaintiff* initiated a wire transfer (from Texas), to a Citibank account. Indeed, Plaintiff alleges that it "initiated a funds transfer" to pay off Loan Ranger's liens, which was "wired to an account at Citibank," and that Citibank

"received" those funds. ECF No. 1, Ex. A-6 ¶¶ 11–14. And, as it turns out, the fraudster's bank account was in Studio City, California, which is where Plaintiff wired and Citibank received funds. *See* **Ex. 1**. Accordingly, Plaintiff cannot establish specific jurisdiction over Citibank.

In *Monkton*, the Fifth Circuit held that plaintiff-initiated wire transfers cannot supply a basis for specific jurisdiction. 768 F.3d at 433–34. There, a Texas resident argued for specific jurisdiction over a Cayman bank based on wire transfers. *Id.* The Fifth Circuit rejected this argument because "the wire transfers facilitated by [the Cayman bank] were initiated by [appellants] and [were] thus insufficient to confer jurisdiction." *Id.* at 433. This result flowed from the precept that "the relationship must arise out of contacts that the defendant *himself* creates with the forum state." *Id.* (quoting *Walden*, 571 U.S. at 284) (original emphasis from Supreme Court). Indeed, "federal courts routinely decline to use money transfers as a basis for specific jurisdiction because the wire transfer is done at the *plaintiff's* request." *Thuney v. Lawyer's Title of Az.*, No. 2:18-CV-1513-HRH, 2019 WL 467697, at *6 (D. Ariz. Feb. 6, 2019) (original emphasis) (discussing *Monkton* and collecting cases);[4] *see Zapata v. HSBC Holdings PLC*, No. 1:16-CV-030, 2017 WL 6939210, at *3 (S.D. Tex. Oct. 17, 2017) (dismissing for lack of personal jurisdiction); *Goldovsky v. Rauld*, No. 6:24-CV-00159-ADA-DTG, 2025 WL 942620, at *6 (W.D. Tex. Feb. 28, 2025), *report and recommendation adopted*, No. 6:24-CV-00159, 2025 WL 939688 (W.D. Tex. Mar. 27, 2025)

[4] *See Fatnani v. JPMorgan Chase Bank, N.A.*, 743 F. Supp. 3d 1253, 1278 (D. Or. Aug. 1, 2024) (citing *Monkton* as "finding no specific jurisdiction over a foreign bank based on wire transfers to and from the forum because the transfers were not initiated by the bank"); *see Harris v. Lloyds TSB Bank, PLC*, 281 F. App'x 489, 495 (6th Cir. 2008) ("The wire transfers accepted or confirmed by Lloyds from Tennessee and any wire transfers originated by Hogsed in the United Kingdom and sent to Tennessee cannot constitute purposeful availment, because none of those transfers were initiated by Lloyds.").

("[S]ending wire transfers to Texas or receiving wire transfers from Texas is not enough to establish minimum contacts").

Applying *Monkton*, there is no specific jurisdiction because the Complaint alleges that *Plaintiff* initiated the wire transfers, which were sent to the alleged fraudster's account in California. *See* ECF No. 1, Ex. A-6 ¶¶ 11–14. Having failed the specific-jurisdiction test at the first step, Plaintiff cannot satisfy the second step (demonstrating that their claim arises from the forum-related contacts). *Monkton*, 768 F.3d at 433. Therefore, exercising personal jurisdiction over Citibank would not be fair and reasonable. *Id.* The Complaint should be dismissed.

## II. Dismissal is proper under Rule 12(b)(6).

To survive dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Peatwatuck Enters. v. Truist Bank*, 773 F. Supp. 3d 366, 369 (S.D. Tex. 2025) (quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted) "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).

### A. Article 4A preempts Plaintiff's common law claims.

"Chapter 4 of the UCC establishes the rights and duties between banks and their customers regarding deposits and collections." *Peatwatuck*, 773 F. Supp. 3d at 370 (citing TEX. BUS. & COM.

CODE §§ 4.101–.504).[5] "The UCC, in these relationships, contains a comprehensive and carefully considered allocation of responsibility among parties to banking relationships." *Id.* "Article 4A is intended to exclusively determine 'the rights, duties, and liabilities' of parties in any situation covered by the particular provisions of the Article." *Id.* "Accordingly, when the UCC applies, common law claims that conflict with the UCC are precluded." *Id.* "A plaintiff is therefore restricted from bringing non-Article 4A claims when those claims 'create rights, duties and liabilities inconsistent with those stated in [Article 4A].'" *Id.* (quoting Tex. Bus. & Com. Code § 4A.101). Preemption occurs when Article 4A's provisions "protect against the type of underlying injury or misconduct alleged" in the underlying complaint. *Id.*

Plaintiff expressly acknowledges that the UCC governs "[t]he funds transfer at issue." ECF No. 1, Ex. A-6 ¶ 27. Plaintiff also brings a claim under the Texas Declaratory Judgment Act seeking a declaration that "[t]he funds transfer is governed by Chapter 4A of the Texas Business and Commerce Code." *Id.* ¶ 52(a). Even so, Plaintiff brings common law claims for negligence, conversion, bailment, money had and received, and unjust enrichment. Each of these claims arises out of the same "funds transfer" and seeks to recover for Citibank's alleged wrongful retention of the fraudulently transferred funds after notice of the fraud—conduct and injury squarely addressed by Article 4A's "comprehensive statutory scheme governing the rights, duties, and liabilities of

---

[5] Citibank submits that the California Commercial Code applies because the funds were wired to Citibank's Studio City, California branch. *See* TEX. BUS. & COMM. CODE § 4A.507 ("The rights and obligations between the sender of a payment order and the receiving bank are governed by the law of the jurisdiction in which the receiving bank is located."). However, because both Texas and California have adopted the UCC and are substantially similar, this Motion relies on case law applying the Texas UCC.

parties to a 'funds transfer.'"[6] Under Article 4A's regime, all of Plaintiff's claims are therefore preempted—as Plaintiff effectively concedes in asking the Court to declare that Article 4A governs the alleged conduct surrounding the funds transfer at issue.

**1. Article 4A preempts Plaintiff's negligence claim.**

Plaintiff alleges Citibank was negligent because it owed "a duty to exercise ordinary care in handling funds received through its banking system" and that it breached that duty by "retaining the funds." ECF No. 1, Ex. A-6 ¶ 33–35. That theory is inconsistent with Article 4A, which occupies this same ground by imposing its own rules governing a receiving bank's post-transfer obligations. *See Peatwatuck*, 773 F. Supp. 3d at 370 (quoting TEX. BUS. & COM. CODE § 4A.101).

Plaintiff's negligence claim focused on Citibank's alleged conduct after receiving the fraudulent transfer is inconsistent with Article 4A, which "explicitly governs the post-transfer recovery process, by providing a careful system for orchestrating the return of funds after a transfer has already gone awry." *Peatwatuck*, 773 F. Supp. 3d at 370 (quoting *Valley Chili Props., LLC v. Truist Bank (Valley Chili II)*, 738 F. Supp. 3d 846, 854 (W.D. Tex. 2024)) (framing *Valley Chili* as rejecting plaintiff's argument that common-law claims were not inconsistent with Article 4A "because they were related to defendant's conduct *after* the funds transfer was accepted" (emphasis added)). Under this framework, courts have expressly rejected negligence theories premised on a bank's post-notice conduct. *See Valley Chili II*, 738 F. Supp. 3d at 854–56 (holding that Article 4A preempted plaintiff's negligence claim and that allowing claims based on a failure to hold or return funds would impermissibly reallocate the loss and "disrupt Article 4A's

[6] "A 'funds transfer' is defined as 'the series of transactions, beginning with the originator's payment order, made for the purpose of making payment to the beneficiary of the order.'" *Id.* (quoting Tex. Bus. & Com. Code § 4A.101(1)).

deliberate system of rules"); *see also Moody Nat. Bank v. Tex. City Dev. Ltd., Co.*, 46 S.W.3d 373, 377–78 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) ("It was not the timing of the conduct" that mattered but whether "the complained-of conduct bore any relationship to the funds transfer."). Because Plaintiff seeks to recover from Citibank interest that accumulated as the direct result of the fraudulent transfer and Citibank's retention of those fraudulently transferred funds upon notice, Plaintiff's negligence claim is preempted by Article 4A.

**2. Article 4A preempts Plaintiff's conversion and money-had-and received claims.**

For the reasons stated above, and specifically because they allege wrongful retention of the allegedly fraudulently transferred funds, *see* ECF No. 1, Ex. A-6 ¶¶ 38–41, 48, Plaintiff's conversion and money-had-and-received claims (both pled in the alternative) are also preempted. *See, e.g.*, *Peatwatuck*, 773 F. Supp. 3d at 371 (citation omitted) (preempting money-had-and-received claim [which, like conversion, alleges wrongful retention of funds transferred by wire] because it "creates obligations for banks that receive a transfer of funds—exactly the purview of Article 4A."); *Valley Chili II*, 738 F. Supp. 3d at 857.

**3. Article 4A preempts Plaintiff's bailment claim.**

Plaintiff's bailment claim (pled in the alternative) is similarly preempted. "Texas defines a bailment as '(1) the delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that the property will be returned to the transferor." *United States v. $500,000.00 in U.S. Currency*, 591 F.3d 402, 405 (5th Cir. 2009). Plaintiff's bailment claim is preempted under the same above principles because it is premised on Citibank's "failure to return the funds [fraudulently transferred] within a reasonable time," ECF No. 1, Ex. A-6 ¶ 44, which,

like Plaintiff's other common law claims, attempts to "create[] obligations for banks that receive a transfer of funds" as is Article 4A's purview. *Peatwatuck*, 773 F. Supp. 3d at 371.

**4. Article 4A preempts Plaintiff's unjust enrichment claim.**

Plaintiff's unjust enrichment claim (pled in the alternative) is similarly preempted. Plaintiff alleges that Citibank "retained possession and control of funds belonging to Capital Title." ECF No. 1, Ex. A-6 ¶ 49. But Article 4A preempts unjust enrichment claims arising from the sort of fraudulent wire transfer at issue. *See Peatwatuck*, 773 F. Supp. 3d at 371 (preempting unjust enrichment claim for this reason). Plaintiff's unjust enrichment claim is based solely on the allegation that Citibank received and retained funds that were fraudulently diverted through a wire transfer. Article 4A covers this ground.

**5. Article 4A preempts Plaintiff's consequential-damages theory.**

Plaintiff seeks damages in the form of interest. *Valley Chili II* squarely rejected this theory, holding that a "request for additional damages in the form of interest and disgorgement of profits does not take [plaintiff's] claims outside the ambit of Article 4A" because "[t]he core injury remains the same—Defendant's alleged wrongful retention of the erroneously transferred funds." *Valley Chili II*, 738 F. Supp. 3d at 857 ("Just as Plaintiff cannot circumvent Article 4A to recover the transferred funds, Plaintiff cannot circumvent Article 4A to recover interest on those funds."). This Court should likewise reject the attempt and find the damages theory preempted.

**B. Plaintiff's claims otherwise fail to state a claim to relief.**

Regardless of preemption, Plaintiff's claims should be dismissed for failure to state a claim.

**1. Plaintiff cannot recover directly against Citibank under the UCC's orderly-unraveling standard.**

As a threshold matter, beyond generally citing Article 4A of the UCC, Plaintiff does not identify any provisions that Citibank is alleged to have violated. *See* ECF No. 1, Ex. A-6 ¶¶ 27–32. Referring generally to an entire section of a statute cannot "allow the court to draw the reasonable inference" that Citibank is "liable for the misconduct alleged." *Peatwatuck*, 773 F. Supp. 3d at 369.

Capital Title's Article 4A claim alleges that Citibank, as "the beneficiary's bank," violated duties under Chapter 4A and "commercially reasonable banking standards" by failing to return misdirected funds within a "commercially reasonable time."[7] *See* ECF No. 1, Ex. A-6 ¶¶ 28–30. This claim fails as a matter of law because Article 4A does not create a direct statutory right running from an originator, such as Capital Title, to a beneficiary's bank, such as Citibank.

As discussed above, Article 4A "explicitly governs the post-transfer recovery process," and it "does not provide [a plaintiff] with a right to recoup the transferred funds directly from [the beneficiary bank]." *Valley Chili II*, 738 F. Supp. 3d at 854. Courts in this District have explained this structure in detail: "[W]hen a beneficiary's bank wrongly accepts a transfer and deposits funds into the account of an unintended beneficiary, Article 4A mandates an 'orderly unravelling of the wire transfers,' in which 'each party in the chain of transactions [can] recover from only the next party in line.'" *Valley Chili Props., LLC v. Truist Bank (Valley Chili I)*, 705 F. Supp. 3d 768, 772 (W.D. Tex. 2023) (citation omitted). *Valley Chili I* was direct on this point: "Plaintiff did not send the wire transfer to Defendant—[Plaintiff's bank] did. Therefore, even if Defendant had actual knowledge of the mismatch and could not rightfully accept the wire transfer[,] . . . Plaintiff has no

[7] The only provision of Article 4A that mentions "commercially reasonable" is that concerning security procedures for authorized and verified payment orders, which is not at issue.

right to recover its funds directly from Defendant." *Id.* at 773–74. That right of recovery "would only belong to" the originator's own bank, from whom the originator could attempt to recover. *Id.*

Capital Title has no direct statutory right against Citibank under Chapter 4A.[8] Any right of recovery Capital Title may have would travel through its own bank—the entity that, as sender, dealt directly with Citibank in the funds transfer. This claim should therefore be dismissed for failure to state a claim upon which relief can be granted.

**2. Plaintiff's negligence claim must be dismissed.**

"Under Texas[9] law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Jones v. Bayview Loan Servicing, LLC*, No. 3:19-CV-00060, 2020 WL 13539136, at *3 (S.D. Tex. Feb. 4, 2020) (quoting *Gutierrez v. Excel Corp.*, 106 F.3d 683, 687 (5th Cir. 1997)).

Plaintiff fails at the first step because, under Texas law, a bank does not owe a duty to a non-customer.[10] Although Plaintiff alleges that "Citibank had a duty to act reasonably and not

[8] This conclusion is further supported by California Financial Code § 1450, which provides that a bank receiving notice of an adverse claim to a deposit is generally required to disregard the notice and continue honoring instruments without liability. The statute's narrow exceptions—an affidavit alleging a fiduciary relationship (§ 1450(a)) or a court order (§ 1450(b))—confirm the burden falls on the claimant, not the bank, to pursue judicial remedies to secure disputed funds. *See MUR Shipping B.V. v. Bank of Am., N.A.*, No. 219-CV-03896, 2019 WL 13133670, at *3 (C.D. Cal. July 3, 2019).

[9] Because Plaintiff alleges its substantive claims under Texas law, Citibank addresses them under Texas law.

[10] *Taya Agric. Feed Mill Co. v. Byishimo*, No. CV H-21-3088, 2022 WL 103557, at *4 (S.D. Tex. Jan. 11, 2022) ("Generally, banks owe no duty to someone who is not a customer and with whom the bank does not have a relationship") (Rosenthal, C.J.) (quoting *JPMorgan Chase Bank, N.A. v. Prof'l Pharmacy II*, 508 S.W.3d 391, 417 (Tex. App.—Fort Worth 2014, no pet.)); *Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *4 (E.D. Tex. Apr. 16, 2020); *Siegfried v. JPMorgan Chase, N.A.*, No. 1:18-CV-1026-LY-ML, 2019 WL 13194134, at *4 (W.D. Tex. Oct. 25, 2019) ("Generally, a bank owes no duty to noncustomers or those the bank

unreasonably withhold funds," ECF No. 1, Ex. A-6 ¶ 34, Plaintiff's allegations cannot create a duty where none exists. Plaintiff's negligence claim thus cannot survive Rule 12(b)(6).

### 3. Plaintiff's conversion claim must be dismissed.

"To state a conversion claim under Texas law, a plaintiff must allege that '(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.'" *Sols. v. First State Bank of Brownsboro*, No. 6:19-CV-329-JDK, 2020 WL 12991132, at *7 (E.D. Tex. Apr. 16, 2020) (quoting *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012)). "'Conversion claims for money must meet additional requirements' under Texas law." *Id.* (quoting *Boardwalk Motor Sports*, 692 F.3d at 381). "Specifically, actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *Id.*

Plaintiff does not allege that it delivered funds to Citibank for safekeeping; to the contrary, Plaintiff alleges that it transferred the funds to Citibank after the transaction was intercepted by a fraudster. In doing so, Plaintiff voluntarily parted with its money and disclaimed all right to possession or ownership over the funds, which "distinguishes [Plaintiff's] situation from the cases finding banks liable for converting money." *Sols.*, 2020 WL 12991132, at *7 (citing *Hous. Nat'l*

---

has no relationship with."); *Owens v. Comerica Bank*, 229 S.W.3d 544, 547 (Tex. App.—Dallas 2007, no pet.); *see generally Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 518 (5th Cir. 2018) (canvassing case law and observing that a bank does not owe a duty to a non-customer absent some fiduciary relationship); *Red Rock v. Jafco Ltd.*, 79 F.3d 1146, 1150 (5th Cir. 1996) ("A bank, however, owes no legal duty of care to investigate or disclose its customers' conduct or intent to third parties with whom the bank's customers do business. This claim therefore fails as a matter of law.").

*Bank v. Biber*, 613 S.W.2d 771, 775–76 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (bank liable for conversion where checks were deposited with bank for safekeeping until payee partnership was formed, but bank instead converted the funds to other uses); *Estate of Townes v. Townes*, 867 S.W.2d 414, 419–20 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (funds were converted where "evidence establishes that the funds in the accounts were in Michael's care for safe keeping and that these funds were intended to be kept segregated as an intact fund"). Plaintiff's allegations do not "overcome Texas courts' traditional hostility to claims for conversion of money." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007). Thus, the conversion claim must also be dismissed under Rule 12(b)(6).

**4. Plaintiff's bailment claim must be dismissed.**

The "very essence of a contract of bailment is that after its purpose has been fulfilled the bailed property shall be redelivered to the bailor." *$500,000.00 in U.S. Currency*, 591 F.3d at 405. (citation and internal quotations omitted). Importantly though, even if a bailment relationship exists, that "does not create a specific cause of action but instead allows the bailor to choose the form of relief for breach, such as an action for breach of contract or an action for conversion." *Crompton Greaves, Ltd. v. Shippers Stevedoring Co.*, 921 F. Supp. 2d 697, 728 (S.D. Tex. 2013).

No bailment relationship exists because Plaintiff does not allege that it delivered the property to Citibank for a specific purpose understanding that the property would eventually be returned to the Plaintiff. Instead, Plaintiff alleges that Citibank became a "bailee of property belonging to Capital Title" once Citibank "retain[ed] the identifiable funds after notice of fraud." ECF No. 1, Ex. A-6 ¶ 42. Plaintiff then alleges that the very act that made Citibank a bailee (retaining the funds upon notice of the fraud) simultaneously constituted a "breach of its duties as

a bailee." *Id.* ¶ 45. That does not create a bailment relationship under Texas law. Even so, Plaintiff's claim would still fail because there is no independent cause of action for bailment under Texas law, and, as detailed above, Plaintiff's conversion claim fails to state a claim. This claim thus must also be dismissed under Rule 12(b)(6).

**5. Plaintiff's money-had-and-received claim must be dismissed.**

"Money had and received is an equitable cause of action that 'belongs conceptually to the doctrine of unjust enrichment.'" *Senior Care Living VI, LLC v. Preston Hollow Cap., LLC*, 695 S.W.3d 778, 816 (Tex. App.—Houston [1st Dist.] 2024, pet. denied). "To be entitled to relief, the plaintiff must demonstrate that the defendant 'holds money which in equity and good conscience belongs to [the plaintiff].'" *Id.* at 817 (citation omitted).

Plaintiff's claim fails for the simple fact that Citibank does not "hold[] money" belonging to the Plaintiff and did not "receive" the funds that Plaintiff claims are its damages. *Alexander O & G, L.L.C. v. Nomad Land & Energy Resources, L.L.C.*, 313 F. Supp. 3d 794 (S.D. Tex. 2018) (granting summary judgment on this claim where it was undisputed that plaintiff wired funds to defendant's account, defendant returned the funds, and "no longer holds it").

Plaintiff alleges that Citibank returned the funds before filing this suit. *See* ECF No. 1, Ex. A-6 ¶ 21. That Plaintiff now seeks what are essentially consequential damages as a result of Citibank allegedly inappropriately retaining those funds does not plausibly state a money-had-and-received claim, which only requires a defendant to "restore money" that "require[s] refund." *See Fcstone Merchant Servs., LLC v. SGR Energy, Inc.*, No. 4:20-cv-3693, 2021 WL 2954190, at *6 (S.D. Tex. July 14, 2021) (citation and quotation marks omitted). Plaintiff's claim must be dismissed.

**6. Plaintiff's unjust enrichment claim must be dismissed.**

"[M]ost of the Texas courts of appeals and federal courts that have considered the question under Texas law have rejected the existence of an independent cause of action for unjust enrichment." *Mission Trading Co., Inc. v. Lewis*, No. CV H-16-3368, 2017 WL 6935824, at *6 (S.D. Tex. July 31, 2017); *Applin v. Deutsche Bank Nat. Tr.*, No. H-13-2831, 2014 WL 1024006, at *7 (S.D. Tex. Mar. 17, 2014) (unpublished) (quoting *Doss* and holding that unjust enrichment is not an independent cause of action).

Even if the Court entertained this claim, it would still fail. "A plaintiff may recover under an unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage." *Peatwatuck*, 773 F. Supp. 3d at 371; *Matter of Connect Transp., L.L.C.*, 825 F. App'x 150, 154 (5th Cir. 2020) ("To survive a motion to dismiss on an unjust enrichment claim, a plaintiff must plead facts sufficient to lead to the plausible inference that the defendant obtained a benefit from the plaintiff by fraud, duress, or the taking of an undue advantage.") (quotation marks omitted).

Plaintiff's allegations do not meet this standard. Plaintiff alleges that Citibank "retained possession and control of funds belonging to Capital Title." ECF No. 1, Ex. A-6 ¶ 49. These allegations do not identify a concrete benefit obtained from Plaintiff nor do they show that any such benefit was procured by Citibank's fraud, duress, or undue advantage. Courts have dismissed materially indistinguishable pleadings. *See, e.g.*, *Peatwatuck*, 773 F. Supp. 3d at 371–72 (dismissing unjust enrichment claim where plaintiff "ma[de] no allegation that [the bank] participated in or had any knowledge of fraud or duress, or that it took any undue advantage" and that "even if [the plaintiff] had adequately alleged an unjust enrichment claim, [the bank's] liability would be based

on the inducement of [the plaintiff] to make the transfer of funds—explicitly within Article 4A's scope"). This claim must also be dismissed.

**7. Plaintiff's request for a declaratory judgment (Tex. Civ. Prac. & Rem. Code Chapter 37) must be dismissed.**

Once removed to federal court, a claim for declaratory judgment under Texas law is "viewed as brought under the [federal] Declaratory Judgment Act." *Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017) (internal quotations and citation omitted). "The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, gives federal courts broad discretion to grant or refuse to grant declaratory judgment. . . . In determining whether to decide a declaratory judgment action, the court must ascertain: (1) if the action is justiciable; (2) if the court has authority to grant the requested relief; and (3) whether the court should exercise its discretion to decide the action." *Meridian Sec. Ins. Co. v. Morris*, No. 5:22-cv-151, 2023 WL 5313905, at *2 (E.D. Tex. Aug. 1, 2023) (quotation marks and citations omitted), *report and recommendation adopted*, 2023 WL 5309802 (E.D. Tex. Aug. 17, 2023). "With respect to justiciability, a federal court may not issue a declaratory judgment unless there exists an actual controversy." *Id.* (citation modified).

"Courts have declined to exercise their discretion to decide declaratory judgment actions where deciding that action would be redundant in light of the affirmative causes of action before the court." *Id.* at *3; *see also Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, No. 4:12-cv-1759, 2012 WL 6569774, at *2 (S.D. Tex. Dec. 17, 2012)."A declaratory judgment action is redundant for this reason if resolution of the affirmative claims and counterclaims before the court would resolve all questions that the declaratory judgment action raises." *Id.* (citations omitted).

Plaintiff's declaratory judgment action should be dismissed because it either seeks declarations that are not in actual controversy or that would be resolved as part of Plaintiff's other

claims. Plaintiff seeks four declarations: that (a) "the funds transfer is governed by Chapter 4A of the Texas Business and Commerce Code"; (b) "upon notice of fraud and demand for return, Citibank had a duty to act in a commercially reasonable manner with respect to the retained funds"; (c) "Citibank did not have a lawful basis to retain the funds for approximately seventeen months after notice"; and (d) "Capital Title was entitled to return of the funds within a commercially reasonable time after notice." ECF No. 1, Ex. A-6 ¶ 52(a)–(d).

The above requested declarations would not resolve an actual controversy between the parties. As discussed, Citibank *agrees* that Chapter 4A covers the funds transfer at issue, to the exclusion of Plaintiff's common law claims. In any event, Plaintiff's requested declarations all mirror, and would be resolved by, the resolution of Plaintiff's claims. *See, e.g.*, *id.* ¶ 29 (alleging in asserting Chapter 4A claim that "[u]pon receiving notice that the transfer was fraudulent and misdirected, Citibank had duties under Chapter 4A and commercially reasonable banking standards concerning the handling and refund of funds not properly payable" and "Citibank failed to return the funds within a commercially reasonable time after notice"); *id.* ¶ 34 (alleging in asserting negligence claim that "Citibank had a duty to act reasonably and not unreasonably withhold funds to which it had no lawful claim"). Accordingly, the Court should dismiss Plaintiff's declaratory judgment claims.

## CONCLUSION

The Complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2) or dismissed with prejudice under Rule 12(b)(6) because Plaintiff's claims are preempted or otherwise fail to state a claim to relief.

Dated: September 8, 2026

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: */s/ Brandon L. King*
Brandon L. King
brandon.king@hklaw.com
Texas Bar. No. 24100613
98 San Jacinto Blvd., Suite 1900
Austin, Texas 78701
(512) 469-6126 Telephone
(512) 472-7473 Facsimile

***Attorney for Defendant***

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was provided to all counsel of record via the Court's CM/ECF system on September 8, 2026.

*/s/ Brandon L. King*
Brandon L. King